**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

ALAN E. SIMMONS,

                              Plaintiff,

         - v -                                              Civ. No. 9:03-CV-1093
                                                             (FJS/RFT)

MICHAEL K. NALLEY, DARRYL D. DREW,
DAVID SNYDER, and DAVID SALAMY,

                              Defendants.

**APPEARANCES:**                                    **OF COUNSEL:**

SYRACUSE UNIVERSITY COLLEGE          MICHAEL A. SCHWARTZ, ESQ.
OF LAW                                         GARY J. PIEPLES, ESQ.
Office of Clinical Programs
Attorneys for Plaintiff
P.O. Box 6543
Syracuse, N.Y. 13217

HON. ANDREW T. BAXTER                BARBARA D. COTTRELL
United States Attorney                       Assistant United States Attorney
Northern District of New York
Attorney for Defendants
James T. Foley Courthouse
Room 218
445 Broadway
Albany, N.Y. 12207

**RANDOLPH F. TREECE**
**United States Magistrate Judge**

## REPORT-RECOMMENDATION and ORDER

       Plaintiff Alan E. Simmons brings this civil rights action, pursuant to *Bivens v. Six Unknown Named Agents of the Fed. Bureau of Narcotics*, 403 U.S. 388 (1971),[1] alleging that (1) Defendants

---

[1] *Bivens v. Six Unknown Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971), recognized the existence of a cognizable claim in certain instances for alleged constitutional violations committed by federal agents. *See Ellis v. Blum*, 643 F.2d 68, 84 (2d Cir. 1981) (noting that a *Bivens* action is a judicially-created remedy). Generally, case law under 42 U.S.C. § 1983 applies to *Bivens* cases. *Chin v. Bowen*, 833 F.2d 21, 24 (2d Cir. 1987) (quoting *Ellis v. Blum*,
                                                                                                    (continued...)

Michael K. Nalley and Darryl D. Drew violated his Eighth Amendment rights by deliberately failing to enforce Bureau of Prisons (BOP) policy regarding smoking inside prisons, thereby exposing Plaintiff to abnormally high levels of environmental tobacco smoke (ETS), causing him physical injury, and (2) Defendants David Snyder and David Salamy retaliated against him for his efforts to protect his health by repeatedly assigning him to cells primarily housing smokers and punishing him with extended stays in segregated confinement. Dkt. No. 62, Third Am. Compl. (hereinafter "Compl.") at pp. 9-10.

Presently before the Court is Defendants' Motion for Summary Judgment, which was referred to this Court for a Report-Recommendation by the Honorable Frederick J. Scullin, Jr., Senior United States District Court Judge. Dkt. No. 107 & Text Order, dated Feb. 18, 2009. Plaintiff opposes the Motion. Dkt. No. 110. For the reasons stated herein, it is recommended that the Defendants' Motion be **GRANTED**.

## I. BACKGROUND

At all relevant times, Plaintiff was an inmate at Ray Brook Federal Correctional Institution (hereinafter "FCI RayBrook"). Plaintiff was housed at FCI RayBrook from March 21, 2002, through October 28, 2005. Dkt. No. 108, Defs.' 7.1 Statement at ¶ 1.[2] Plaintiff contends that while at FCI RayBrook, he was exposed to high levels of ETS, to which he was allergic, causing him to

---

[1](...continued)
643 F.2d at 84).

[2] Plaintiff has failed to respond to Defendants' 7.1 Statement as required under the Local Rules for the Northern District of New York, and therefore, we rely on the facts alleged in Defendants' 7.1 Statement. *See* N.D.N.Y.L.R. 7.1(a)(3) ("<u>Any facts set forth in the Statement of Material Facts shall be deemed admitted unless specifically controverted by the opposing party</u>." (emphasis in original)). In this respect, we note with lament that prior to obtaining representation in this case, Plaintiff, as a *pro se* litigant, managed to file a 7.1 Statement in response to the Defendants' previous Motion to Dismiss or in the alternative, for Summary Judgment. *See* Dkt. No. 31-1, Pl.'s 7.1 Statement. All attorneys providing representation in the Northern District of New York, on a *pro bono* basis or otherwise, are obliged to follow the Local Rules.

develop a chronic cough and to suffer headaches, chest discomfort, irritated sinus passages, diminished lung function, respiratory problems, increased phlegm, and lung and throat infections. Comp. at ¶¶ 8, 15, & 32. On two occasions, Plaintiff alleges he experienced incidents of sudden weakness, numbness, and paralysis. *Id.* at ¶ 33.

Plaintiff filed his initial *pro se* Complaint on September 5, 2003, against Michael K. Nalley, Darryl D. Drew, Kathleen Hawk Sawyer, Harley G. Lappin, and Harlan Smith. Dkt. No. 1. On February 3, 2004, those Defendants filed a Motion to Dismiss or, in the alternative, for Summary Judgment. Dkt. No. 13. During the pendency of that Motion, Plaintiff twice moved to amend his pleading, which motions were granted in both instances. Dkt. Nos. 35, 40, 42, 47, & 53. Plaintiff's *pro se* Second Amended Complaint was accepted for filing on March 21, 2005. Dkt. No. 53. On March 23, 2005, the Court granted Defendants' Motion to Dismiss in part, and directed Plaintiff to re-file his Second Amended Complaint (which constituted his Third Amended Complaint). Dkt. No. 54. Plaintiff, now represented by counsel, filed his Third Amended Complaint, on May 20, 2005, against Defendants Nalley, Drew, Snyder, and Salamy. Dkt. Nos. 61-62. On October 23, 2006, Defendants filed a Motion to Dismiss the Third Amended Complaint, which was denied by the district court on January 14, 2008. Dkt. Nos. 86 & 92. Defendants filed the instant Motion for Summary Judgment on February 17, 2009. Dkt. No. 107.

## II.  DISCUSSION

### A.  Summary Judgment Standard

Pursuant to FED. R. CIV. P. 56(c), summary judgment is appropriate only where "there is no genuine issue as to any material fact and [the moving party] is entitled to judgment as a matter of

law." The moving party bears the burden to demonstrate through "'pleadings, depositions, answers to interrogatories, and admissions on file, together with [] affidavits, if any,'" that there is no genuine issue of material fact. *F.D.I.C. v. Giammettei*, 34 F.3d 51, 54 (2d Cir. 1994) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). "When a party has moved for summary judgment on the basis of asserted facts supported as required by [Federal Rule of Civil Procedure 56(e)] and has, in accordance with local court rules, served a concise statement of the material facts as to which it contends there exist no genuine issues to be tried, those facts will be deemed admitted unless properly controverted by the nonmoving party." *Glazer v. Formica Corp.*, 964 F.2d 149, 154 (2d Cir. 1992).

To defeat a motion for summary judgment, the non-movant must "set out specific facts showing [that there is ]a genuine issue for trial," and cannot rest "merely on allegations or denials" of the facts submitted by the movant. FED. R. CIV. P. 56(e); *see also Scott v. Coughlin*, 344 F.3d 282, 287 (2d Cir. 2003) ("Conclusory allegations or denials are ordinarily not sufficient to defeat a motion for summary judgment when the moving party has set out a documentary case."); *Rexnord Holdings, Inc. v. Bidermann*, 21 F.3d 522, 525-26 (2d Cir. 1994). To that end, sworn statements are "more than mere conclusory allegations subject to disregard . . . they are specific and detailed allegations of fact, made under penalty of perjury, and should be treated as evidence in deciding a summary judgment motion" and the credibility of such statements is better left to a trier of fact. *Scott v. Coughlin*, 344 F.3d at 289 (citing *Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir. 1983) and *Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995)).

When considering a motion for summary judgment, the court must resolve all ambiguities and draw all reasonable inferences in favor of the non-movant. *Nora Beverages, Inc. v. Perrier*

*Group of Am., Inc.*, 164 F.3d 736, 742 (2d Cir. 1998). "[T]he trial court's task at the summary judgment motion stage of the litigation is carefully limited to discerning whether there are any genuine issues of material fact to be tried, not to deciding them. Its duty, in short, is confined at this point to issue-finding; it does not extend to issue-resolution." *Gallo v. Prudential Residential Servs., Ltd. P'ship*, 22 F.3d 1219, 1224 (2d Cir. 1994).

### B.  Eighth Amendment Claim

Plaintiff alleges that Defendants Nalley and Drew deliberately failed to enforced BOP smoking policies and allowed Plaintiff to be exposed to abnormally high levels of ETS, thereby violating his Eight Amendment rights. Compl. at ¶ 43.

The Eighth Amendment prohibits cruel and unusual punishment of inmates. U.S. Const. amend. VIII. To establish civil liability for a violation of the conditions of confinement under the Eighth Amendment, a § 1983 plaintiff must demonstrate that (1) the conditions were so serious that they constituted a denial of the "minimal civilized measure of life's necessities," and (2) the prison officials acted with "deliberate indifference." *Wilson v. Seiter*, 501 U.S. 294, 297-99 (1991) (citation omitted) (cited in *Branham v. Meachum*, 77 F.3d 626, 630-31 (2d Cir. 1996)).

In *Helling v. McKinney*, 509 U.S. 25 (1993), the Supreme Court held that the aforementioned standard applies to Eighth Amendment claims premised on the risk of physical injury from exposure to second-hand smoke. Thus, under the first, objective prong, a plaintiff must demonstrate exposure to levels of ETS that have caused or pose an unreasonable risk of causing serious damage to his health that is "so grave [] it violates contemporary standards of decency to expose anyone unwillingly to such a risk." *Helling v. McKinney*, 509 U.S. at 36. The second, subjective prong, whether the Defendants acted with deliberated indifference, "should be determined in light of the

-5-

prison authorities' current attitudes and conduct," including whether a smoking policy has been adopted and the extent to which it has been enforced. *Id.*

Because both of the above prongs must be met in order to prove an Eighth Amendment violation, we may begin by considering whether there are questions of fact regarding whether Defendants acted with deliberate indifference under the subjective prong of the aforementioned Eighth Amendment standard. *Helling v. McKinney*, 509 U.S. at 35 (noting that a court may consider either element first, and need not consider the remaining element if there is a failure of proof on the first). Deliberate indifference exists if an official "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994).

Plaintiff alleges that Defendants Drew and Nalley deliberately failed to enforce BOP smoking policy. Compl. at ¶ 43. Plaintiff also alleges that he "has spoken directly to both Nalley and Drew about these issues and has filed written grievances which . . . should have been reviewed and addressed by Nalley and Drew." *Id.* at ¶ 28.

Defendant Nalley was the Warden at FCI Ray Brook from November 18, 2001, until June 14, 2003. Dkt. No. 107-7, Defs.' Mot. for Summ. J., Michael K. Nalley, Decl., dated Feb. 9, 2009 (hereinafter "Nalley Decl."), at ¶ 1. Nalley avers that the BOP has had a smoking policy in effect since 1994. That policy, explained in BOP Program Statement 1640.03 entitled <u>Smoking/No Smoking Areas</u>, became effective on August 1, 1994, and "directed all Wardens to identify smoking and non-smoking areas within their institution." *Id.* at ¶ 2 & Ex. 1, BOP Program Statement 1640.03 at ¶ 6. At the time Plaintiff arrived at FCI Raybrook on March 21, 2002, that institution had its own

supplemental smoking policy, laid out in Institution Supplement RBK 1640.3A, which stated that

> areas of the institution were non-smoking areas unless designated otherwise by a sign reading "Designated Smoking Area." With regard to housing areas, the only cells where smoking was allowed were "individual cells." It further stated that a non-smoking inmate would not be housed with an inmate who smokes as a general rule. However, if a temporary situation arose where smokers had to be housed with non-smokers, the cell would become a non-smoking cell.

*Id.* at ¶ 3 & Ex. 2, RBK 1640.3A at ¶ 5.

Nalley states that he updated FCI Raybrook's smoking policy again on August 30, 2002, adding the rule that smoking was not allowed in any four, six, or twelve man cells. *Id.* at ¶ 4 & Ex. 3, RBK 1640.3B at ¶ 5. Finally, on April 4, 2003, Nalley sent out a memorandum to the entire inmate population in order to clarify FCI RayBrook's smoking policy. In that letter, Nalley reiterated the previously mentioned rules, and reminded inmates that "[t]he only area(s) where indoor smoking is allowed is in two man cells . . . and in the Designated Smoking Area in the UNICOR factory. When a non-smoker is residing in a two man cell, the cell automatically becomes a no smoking cell." *Id.*, Ex. 4, Mem. dated Apr. 4, 2003. That memorandum also warns that "[i]nmates who violate this policy will be disciplined accordingly." *Id.* In that respect, Nalley swears that he encouraged strict compliance with the BOP and FCI RayBrook policies, and states that "many incident reports were written to inmates violating the smoking policy during [his] tenure as Warden." *Id.* at ¶ 6.

Defendant D.B. Drew served as Warden at FCI Raybrook from June 15, 2003, to February 5, 2005. Dkt. No. 107-9, D.B. Drew Decl., dated Feb. 2009,[3] (hereinafter "Drew Decl.") at ¶ 1. Drew states that as of July 15, 2004, the BOP smoking policy, Program Statement 1640.03, was

---

[3] The exact date is not visible on Drew's Declaration.

superceded by a new Program Statement that effectively[4] banned indoor smoking at all BOP facilities. *Id.* at ¶ 2 & Ex. 1, Program Statement 1640.04, dated Mar. 15, 2004 at ¶ 8. In response to that policy change, Drew issued a new supplemental policy for FCI Raybrook which allowed smoking by inmates and staff only "in designated outside areas, and prohibited staff and inmates from smoking as they moved throughout the institution. Therefore, all housing cells became smoke free." *Id.* at ¶ 5 & Ex. 2, RBK 1640.3d, dated Aug. 23, 2004 at ¶ 5. Drew also sent several memoranda to staff and the inmate population prior to the implementation of the aforementioned BOP indoor smoking ban in order to prepare them for the policy change. *Id.*, Exs. 3-7, Mems. dated June 24, July 14, & Aug. 16, 2004. Finally, Drew swears that he "enforced and encouraged [his] staff to strictly enforce the smoking policy," and that "many incident reports were written for violations of the smoking policy" during his tenure as Warden. *Id.* at ¶ 7.

In response to the Defendants' Motion, Plaintiff offers only the conclusory allegation that Nalley and Drew failed to enforce BOP smoking policy. *See* Pl.'s Mem. of Law at p. 9. Plaintiff offers absolutely no evidentiary support for that contention, in the form of affidavits or otherwise, which could rebut Nalley and Drew's assertions that they maintained and enforced BOP and FCI RayBrook smoking policies. In *Helling*, the Supreme Court held that the adoption of a smoking policy should "bear heavily on the inquiry into deliberate indifference." 509 U.S. at 36, *see also Colon v. Sawyer*, 2006 WL 721763, at *10 (N.D.N.Y. Mar. 20, 2006) (evidence of BOP's increasingly aggressive smoking policies "somewhat undermines any claim of deliberate indifference." (internal citations omitted)).

Beyond Plaintiff's conclusory allegations, there is simply nothing in the record to suggest

---

[4] The policy had an exception for smoke used in religious practices. Drew Decl., Ex. 1, Program Statement 1640.04 at ¶ 8(a).

that Defendants Nalley and Drew displayed deliberate indifference to Plaintiff's health. On a motion for summary judgment, "[c]onclusory allegations or denials are ordinarily not sufficient to defeat a motion for summary judgment when the moving party has set out a documentary case." *Scott v. Coughlin*, 344 F.3d at 287. Because Plaintiff has failed to meet his burden of showing an issue of material fact exists on the subjective prong of the Eighth Amendment standard, we need not address the objective prong.

However, even if we were to assume, *arguendo*, that Plaintiff had met his burden under the subjective prong, we would find that he has failed to meet his burden under the objective prong as well. Plaintiff has failed to introduce *any* evidence, beyond his own allegations in the Complaint, regarding the levels of ETS that he was allegedly exposed to. As stated earlier, under the objective prong, a Plaintiff must demonstrate exposure to levels of ETS "so grave that it violates contemporary standards of decency to expose anyone unwillingly to such a risk." *Helling v. McKinney*, 509 U.S. at 36. Thus, Plaintiff's Eighth Amendment claim should be dismissed on that ground as well. *See, e.g., Johnson v. Goord*, 2005 WL 2811776, at *7 (S.D.N.Y. Oct. 27, 2005) (granting motion for summary judgment when plaintiffs failed to present any evidence that they were exposed to constitutionally significant levels of ETS and noting that plaintiffs "pro se status, while implicating a more liberal interpretation of their pleadings, does not excuse them from the burden of coming forward with concrete evidence from which a reasonable juror could return a verdict in their favor." (internal quotation marks and citations omitted)); *cf. Colon v. Sawyer*, 2006 WL 721763, at *8 (finding objective prong met when plaintiff's allegations were substantiated by affidavits of fellow inmates).

For these reasons, it is recommended that Plaintiff's Eighth Amendment claim be **dismissed**.

### C. First Amendment Retaliation Claim

Plaintiff alleges that Defendants Snyder and Salamy retaliated against him "for his efforts to protect his health and to protect himself from violations of his Eighth Amendment rights" by "repeatedly assigning [him] to cells housing primarily smokers . . . and punishing him with extended periods in segregation for refusing [those] cell assignments." Compl. at ¶ 45.

The Second Circuit has stated that courts must approach prisoner retaliation claims "with skepticism and particular care," since "virtually any adverse action taken against a prisoner by a prison official - even those otherwise not rising to the level of a constitutional violation - can be characterized as a constitutionally proscribed retaliatory act." *Dawes v. Walker*, 239 F.3d 489, 491 (2d Cir. 2001) (citing *Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir. 1983) & *Franco v. Kelly*, 854 F.2d 584, 590 (2d Cir. 1988)), *overruled on other grounds by Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002).

In order to prevail on a retaliation claim, a plaintiff bears the burden to prove, "first, that he engaged in constitutionally protected conduct and, second, that the conduct was a substantial or motivating factor for the adverse actions taken by prison officials." *Bennett v. Goord*, 343 F.3d 133, 137 (2d Cir. 2003) (citations omitted). Thus, there must be a "causal connection between the protected speech and the adverse action." *Gill v. Pidlypchak*, 389 F.3d 379, 380 (2d Cir. 2004) (citation omitted).

A plaintiff may meet the burden of proving an inappropriate retaliatory motive by presenting circumstantial evidence of a retaliatory motive, such as temporal proximity, thus obviating the need for direct evidence. *Bennett v. Goord*, 343 F.3d at 138-39 (holding that plaintiff met his burden in proving retaliatory motive by presenting circumstantial evidence relating to, *inter alia*, the temporal

proximity of allegedly false misbehavior reports and the subsequent reversal of the disciplinary charges on appeal as unfounded). Other factors that can infer an improper or retaliatory motive include the inmate's prior good disciplinary record, vindication at a hearing on the matter, and statements by the defendant regarding his motive for disciplining plaintiff. *McEachin v. Selsky*, 2005 WL 2128851, at *5 (N.D.N.Y. Aug. 30, 2005) (citing *Colon v. Coughlin*, 58 F.3d 865, 872-73 (2d Cir. 1995)).

Moreover, "in the prison context [the Second Circuit has] previously defined 'adverse action' *objectively*, as retaliatory conduct 'that would deter a similarly situated individual of ordinary firmness from exercising . . . constitutional rights.'" *Gill v. Pidlypchak*, 389 F.3d at 381 (quoting *Davis v. Goord*, 320 F.3d 346, 353 (2d Cir. 2003) (emphasis in original)). This objective test will apply even though a particular plaintiff was not himself deterred. *Id.* If the plaintiff can carry that burden, the defendants will still be entitled to summary judgment if they can show, by a preponderance of the evidence, that they would have taken the same action in the absence of the prisoner's First Amendment activity. *Davidson v. Chestnut*, 193 F.3d 144, 148-49 (2d Cir. 1999); *see Hynes v. Squillace*, 143 F.3d 653, 657 (2d Cir. 1998); *Lowrance v. Achtyl*, 20 F.3d 529, 535 (2d Cir. 1994).

In their Motion, Defendants do not challenge Plaintiff's allegation that he engaged in constitutionally protected conduct, and therefore, for the purposes of deciding this Motion, we will assume that the first element of Plaintiff's First Amendment retaliation claim has been met. With respect to the adverse actions element, Plaintiff alleges that Defendants retaliated against him by (1) placing him in the Special Housing Unit (hereinafter "SHU") and (2) upon his release from SHU, placing him in a 12-man cell known to have high levels of ETS due to unsanctioned smoking. Dkt.

No. 110, Pl.'s Resp. in Opp'n to Defs.' Mot. at pp. 4-5; Compl. at ¶¶ 36-37, 39-41, & 45.

The record shows that Plaintiff spent two significant terms in SHU due to his refusal to enter his assigned cell. On December 1, 2004, Senior Officer R. Brown[5] wrote the following incident report:

> [W]hile conducting routine shakedowns in the Metal Detector Building, Inmate Simmons, approached myself, and stated that he needed to be locked up because he couldn't stand the cigarette smoke in the housing unit anymore. I escorted Inmate Simmons to the Lieutenant's Office where he discussed this matter with Lieutenant Washington. . . . After the discussion Lieutenant Washington gave Inmate Simmons a direct order to go back to his housing unit. At this time Inmate Simmons refused to return to Genesee B unit and was then escorted to the Special Housing Unit.

Dkt. No. 107-3, David Snyder Decl., dated Jan. 2009[6] (hereinafter "Snyder Decl."), Ex. 2, Incident Rep., dated Dec. 1, 2004.

Lieutenant Washington[7] confirmed this description in a Memorandum, stating that he "assured Simmons that the [smoking] situation would be rectified but, he was not satisfied with my response," and then refused when "ordered to return to his assigned housing unit." *Id.*, Ex. 2, Mem., dated Dec. 1, 2004.

At that time, Defendant Snyder served as the Unit Disciplinary Committee ("UDC") Chairperson. *Id.* at ¶ 4. The UDC holds initial hearings when an inmate is charged with an infraction, and is made up of staff members designated by the Warden. The UDC may not include a reporting staff member, an investigating officer, nor a witness to the incident in question. *Id.* The UDC has the power to impose minor sanctions, and can also recommend sanctions to the Discipline Hearing Officer ("DHO"), who renders a final disposition. *Id.* Snyder served as UDC Chairperson

---

[5] R. Brown is not a named defendant in this action.

[6] The exact date is not noted on the Declaration.

[7] Lieutenant Washington is not a named defendant in this action.

in the initial hearing against Plaintiff held on December 7, 2004, after which the UDC referred the matter to the DHO. *Id.* at ¶ 7. The DHO hearing was held on December 14, 2004, before D. Ryan,[8] at which Plaintiff admitted to the charge and the DHO found him guilty of refusing a direct order; he was sanctioned with, *inter alia*, 15 days segregated confinement. *Id.* Ex. 5, DHO Hr'g Rep., dated Dec. 20, 2004.

Plaintiff was released from SHU on December 29, 2004, and on that date, he received another incident report for refusing a direct order. Corrections Officer (C.O.) Scott Martelle[9] wrote in the report that Plaintiff

> told me in the Genesee-B officers station that he did not want to be housed in his current cell. I told inmate [Simmons] that this was the only cell available to him at this time and gave him an order to accept his current cell assignment. Inmate Simmons then stated that he wasn't going to stay in that cell to lock him up and to wright [sic] him a shot, or 15 shots[,] he didn't care.

*Id.*, Ex. 6, Incident Rep. dated Dec. 29, 2004.

Defendant Snyder again served as the UDC Chairperson for Plaintiff's initial hearing, and again referred the case to the DHO. *Id.* The DHO hearing was held on January 14, 2005, before D. Ryan at which Plaintiff again admitted to refusing a direct order. *Id.*, Ex. 7, DHO Hr'g Rep., dated Jan. 19, 2005. Plaintiff was again sentenced to 15 days segregated confinement. *Id.*

Our review of the documents in the record presents the conclusion that Defendant Snyder did not have the authority to sentence Plaintiff to a term in SHU, and in fact, served only as the UDC Chairperson, nor was he otherwise involved in the incidents that led to Plaintiff's confinement. Snyder Decl. at ¶ 11. Furthermore, Plaintiff has not presented any evidence that Snyder was involved in the assignment of Plaintiff to a cell, either before his refusal to stay in the Genesee B

---

[8] D. Ryan is not a named defendant in this action.

[9] Scott Martelle is not a named defendant in this action.

Unit on December 1, 2004, or upon his release from SHU on December 29, 2004, when he refused placement in the 12-man cell. Because Plaintiff has failed to demonstrate that Snyder took any adverse actions against him, it is recommended that his retaliation claim against Snyder be **dismissed**.

Defendant Salamy is a Case Manager at FCI RayBrook. Dkt. No. 107-6, David Salamy Decl., dated Jan. 30, 2009, at ¶ 1. On December 29, 2004, the date Plaintiff was released from his first stint in SHU and then disobeyed another direct order to return to his assigned cell, Salamy wrote a Memorandum regarding an interaction he had with Plaintiff in which he stated:

> [I]nmate Simmons approached me and asked "is this further punishment?" I inquired to what he was talking about, and he replied, "well . . . they let me out of Seg and now I'm in a 12-man cell. Is that more Punishment?" I realized that inmate Simmons was referring to the fact that he was recently released from SHU and assigned to the 12-man cell in Genesee B. I informed inmate Simmons he would have to talk to his counselor in the morning. Inmate Simmons then stated that he would be returning to SHU. At approximately 8:00 P.M. the same evening, inmate Simmons entered my office and again stated that he would be returning to SHU, and then left my office. I informed the unit office and Lieutenant Pickereign of his comments. [A] few minutes later inmate Simmons entered the officer's station and was ordered by Officer Martelle to accept his assigned cell. Simmons refused stating, 'lock me up, I'm not going to that cell. You can write a shot for all I care, or write 15 shots for all I care.'

Snyder Decl., Ex. 6, Mem. dated Dec. 29, 2004.

Salamy denies any involvement in Plaintiff's transfer to SHU on either occasion, and further asserts that he did not retaliate against Plaintiff in any way. Salamy Decl. at ¶ 7. There is no evidence in the record that Salamy had any involvement in Plaintiff's placement in SHU on either occasion or in the 12-man cell after his release from SHU on December 29, 2004. Again, Plaintiff has offered no evidence, documentary or otherwise, to rebut Salamy's sworn Declaration. Thus, we find that there is no question of material fact regarding any adverse action Salamy allegedly took against Plaintiff.

Because Plaintiff has failed to rebut Salamy's documentary case, it is recommended that his retaliation claim be **dismissed** as against Salamy as well. *See Scott v. Coughlin*, 344 F.3d at 287.

### III. CONCLUSION

For the reasons stated herein, it is hereby

**RECOMMENDED**, that Defendants' Motion for Summary Judgment (Dkt. No. 107) be **GRANTED** and Plaintiff's Third Amended Complaint (Dkt. No. 62) **DISMISSED**; and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Report-Recommendation and Order upon the parties to this action.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have ten (10) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN TEN (10) DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); *see also* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72, 6(a), & 6(e).

Date:   August 17, 2009
        Albany, New York

RANDOLPH F. TREECE
United States Magistrate Judge