UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

ALAN E. SIMMONS,

                               Plaintiff,

                      v.                                  9:03-CV-1093
                                                         (FJS/RFT)
MICHAEL K. NALLEY, DARRYL D. DREW,
DAVID SNYDER, and DAVID SALAMY,

                               Defendants.
_____

**APPEARANCES**                                   **OF COUNSEL**

**SYRACUSE UNIVERSITY COLLEGE**    **MICHAEL A. SCHWARTZ, ESQ.**
**OF LAW**                                    **GARY J. PIEPLES, ESQ.**
Office of Clinical Programs
P.O. Box 6543
Syracuse, New York 13217
Attorneys for Plaintiff

**OFFICE OF THE UNITED**            **BARBARA D. COTTRELL, AUSA**
**STATES ATTORNEY**
James T. Foley U.S. Courthouse
445 Broadway
Albany, New York 12207

**SCULLIN, Senior Judge**

## MEMORANDUM-DECISION AND ORDER

### I. INTRODUCTION

      Currently before the Court are Plaintiff's objections to Magistrate Judge Treece's August 17, 2009 Report-Recommendation and Order, in which he recommended that the Court grant Defendants' motion for summary judgment.

## II. BACKGROUND

Plaintiff brought this civil rights action, pursuant to *Bivens v. Six Unknown Names Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971), alleging that (1) Defendants Nalley and Drew violated his Eighth Amendment rights by deliberately failing to enforce Bureau of Prisons ("BOP") policy regarding smoking inside prisons and thereby exposing him to abnormally high levels of environmental tobacco smoke ("ETS") and causing him physical injury and (2) Defendants Snyder and Salamy retaliated against him for his efforts to protect his health by repeatedly assigning him to cells primarily housing smokers and punishing him with extended stays in segregated confinement. *See* Third Amended Complaint at 9-10.

Defendants moved for summary judgment, *see* Dkt. No. 107; and Plaintiff opposed that motion, *see* Dkt. No. 110.[1] In a Report-Recommendation and Order dated August 17, 2009, Magistrate Judge Treece recommended that the Court grant Defendants' motion. *See* Dkt. No. 112. Plaintiff filed timely objections to that recommendation. *See* Dkt. No. 113.

## III. DISCUSSION

**A.    Standard of review**

In reviewing a magistrate judge's report-recommendation, the district court may decide to accept, reject or modify those recommendations. *See* 28 U.S.C. § 636(b)(1). The court conducts a *de novo* review of the portions of the magistrate judge's recommendations to which a party objects. *See Pizarro v. Bartlett*, 776 F. Supp. 815, 817 (S.D.N.Y. 1991). *De novo* review is not

---

[1] As Magistrate Judge Treece noted in his Report-Recommendation and Order, Plaintiff did not file a response to Defendants' Statement of Material Facts. *See* Report-Recommendation and Order at 2 n.2.

required, however, if a party fails to file specific objections. *See Wilds v. United Parcel Serv.*, 262 F. Supp. 2d 163, 169 (S.D.N.Y. 2003) (noting that where "no timely objection has been made, a district court need only satisfy itself that there is no clear error on the face of the record"). Nor is a court required to conduct *de novo* review where the parties' objections to the magistrate judge's recommendation repeat the arguments that the parties made in the original pleadings. *See Edwards v. Fischer*, 414 F. Supp. 2d 342, 346-47 (S.D.N.Y. 2006) (citations omitted). Finally, even if the parties file no objections, the court must ensure that the face of the record contains no clear error. *See Wilds*, 262 F. Supp. 2d at 169 (quotation omitted).

**B.     Summary judgment standard**

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment is warranted if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In determining whether a genuine issue of material fact exists, the court must resolve all ambiguities and draw all reasonable inferences against the moving party. However, when the moving party has met its initial burden of establishing the absence of any genuine issue of material fact, the nonmoving party must come forward with "specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e). Furthermore, when a plaintiff fails to respond to a defendant's factual assertions contained in its Statement of Material Facts, the court will accept as true the factual assertions contained in that Statement of Material Facts to the extent that those facts are supported by the evidence in the record.

## C. Plaintiff's Eighth Amendment claim

The crux of Plaintiff's Eighth Amendment claim is that Defendants Drew and Nalley deliberated failed to enforce BOP's smoking policy, thereby exposing Plaintiff to abnormally high levels of ETS. *See* Third Amended Complaint at ¶ 43.

To establish an Eighth Amendment violation premised on the conditions of confinement, a plaintiff must show that the conditions were so serious that they constituted a denial of the "minimal civilized measure of life's necessities," and that the prison officials were deliberately indifferent to those needs. *Wilson v. Seiter*, 501 U.S. 294, 297-99 (1991) (citation omitted). In *Helling v. McKinney*, 509 U.S. 25 (1993), the Supreme Court held that this standard applies to Eighth Amendment claims premised on the risk of physical injury from exposure to second-hand smoke. In this context, a plaintiff must demonstrate exposure to levels of ETS that have caused or pose an unreasonable risk of causing serious damage to his health that is "so grave that it violates contemporary standards of decency to expose *anyone* unwillingly to such a risk." *Id.* at 36. Furthermore, in determining whether the defendants acted with deliberate indifference, the court must consider "the prison authorities' current attitudes and conduct," including whether they have adopted, and to what extent that have enforced, a smoking policy. *See id.*

Applying these legal principles to the facts of this case, Magistrate Judge Treece noted that, in response to Defendants' motion for summary judgment, "Plaintiff offer[ed] absolutely no evidentiary support for [his] contention [that Defendants failed to enforce BOP's smoking policy], in the form of affidavits or otherwise, which could rebut Nalley and Drew's assertions that they maintained and enforced BOP and FCI RayBrook smoking policies." *See* Report-

Recommendation and Order at 8. Furthermore, he found that, "[b]eyond Plaintiff's conclusory allegations, there is simply nothing in the record to suggest that Defendants Nalley and Drew displayed deliberate indifference to Plaintiff's health." *See id.* at 8-9.

Finally, Magistrate Judge Treece found that "Plaintiff [had] failed to introduce *any* evidence, beyond his own allegations in the Complaint, regarding the levels of ETS that he was allegedly exposed to." *See id.* at 9. Therefore, Magistrate Judge Treece concluded that Plaintiff had failed to demonstrate that the level of ETS to which he was exposed was "'so grave that it violate[d] contemporary standards of decency to expose anyone unwillingly to such a risk.'" *Id.* (quoting *Helling v. McKinney*, 509 U.S. at 36). Therefore, for both of these reasons, Magistrate Judge Treece concluded that Plaintiff had failed to establish an Eighth Amendment claim against Defendants Nalley and Drew.

Plaintiff's counsel filed a two-page summary of Plaintiff's handwritten objections, together with those objections, to Magistrate Judge Treece's recommendations.[2] Plaintiff asserts that Magistrate Judge Treece did not resolve the ambiguities and draw reasonable inferences in his favor. To support this contention, he directs the Court's attention to page 42 of Defendants' Exhibit 6, attached to their summary judgment motion, which, he claims, shows that his statements regarding assignment to the SHU were not requests for assignment to the SHU but were designed to trigger placement in the SHU as an escape from the regular cells which had high levels of ETS. *See* Summary of Plaintiff's Objections at 2. Furthermore, Plaintiff claims

---

[2] The Court reviewed both counsel's summary and Plaintiff's handwritten objections. The Court notes that Plaintiff's handwritten objections are both difficult to read and difficult to understand. Having reviewed both the summary and the handwritten objections, the Court finds that the summary of Plaintiff's objections is accurate and, therefore, will cite to that summary for ease of reference.

that, after fifteen days in SHU, he was transferred to a cell with even higher levels of ETS than SHU and his original cell.  *See id.*

Plaintiff also contends that he has shown that, despite the no-smoking policy at Ray Brook, he was exposed to high levels of ETS in various parts of the facility and that the medical evidence in this case shows that he had a persistent cough that was directly linked to inhaled irritants.  *See id.*  In addition, Plaintiff claims that an issue of fact exists as to whether the level of ETS was unreasonably high and, therefore, constituted a violation of contemporary standards of decency.  Finally, Plaintiff argues that Defendants' Exhibits 5, 6 and 7 show that he informed them of his medical condition and repeatedly complained to them about the high levels of tobacco smoke.  *See id.*  Therefore, he asserts that "Defendants cannot be heard to say they did not know [he] had a medical problem exacerbated by ETS . . . [and that] by ignoring [his] complaints and housing him in punitive segregation, they clearly failed to take remedial action, and this failure constitutes a showing of deliberate indifference."  *See id.*

The Court has reviewed the documents to which Plaintiff refers in his objections and finds that none of them support his claim that Defendants were deliberately indifferent to his concerns about ETS or that they failed to implement or ensure compliance with BOP's non-smoking regulations.  Furthermore, there is nothing in the record to indicate what the level of Plaintiff's exposure to ETS was at Ray Brook.  Therefore, the Court adopts Magistrate Judge Treece's recommendation and dismisses Plaintiff's Eighth Amendment claim.

D.   **Plaintiff's First Amendment retaliation claim**

Plaintiff alleges that Defendants Snyder and Salamy retaliated against him "for his efforts

to protect his health and to protect himself from violations of his Eighth Amendment rights" by "repeatedly assigning [him] to cells housing primarily smokers . . . and punishing him with extended periods of segregation for refusing [those] cell assignments." *See* Third Amended Complaint at ¶ 45.

To prevail on a retaliation claim, a plaintiff must prove "that he engaged in constitutionally protected conduct and . . . that the conduct was a substantial or motivating factor for the adverse action taken by prison officials." *Bennett v. Goord*, 343 F.3d 133, 137 (2d Cir. 2003) (citations omitted). Thus, there must be a "'causal connection between the protected speech and the adverse action.'" *Gill v. Pidlypchak*, 389 F.3d 379, 380 (2d Cir. 2004) (quotation omitted). Even if the plaintiff is able to carry this burden, the defendant will still be entitled to summary judgment if he can show, by a preponderance of the evidence, that he would have taken the same action in the absence of the plaintiff's First Amendment activity. *See Davidson v. Chestnut*, 193 F.3d 144, 148-49 (2d Cir. 1999).

Since Defendants did not challenge Plaintiff's allegation that he had engaged in constitutionally protected conduct, Magistrate Judge Treece assumed that he had met the first element of his retaliation claim. *See* Report-Recommendation and Order at 11. With respect to the adverse actions element, Plaintiff contended that Defendants retaliated against him by placing him in SHU and, upon his release from SHU, placing him in a twelve-man cell with high levels of ETS due to unsanctioned smoking. *See id.*

Plaintiff served two terms in SHU due to his refusal to enter his assigned cell. At the time of the first incident in December 2004, Defendant Snyder served as the Chairperson of the Unit Disciplinary Committee ("UDC"), which is comprised of staff members whom the Warden

designates. *See id.* at 12. "The UDC has the power to impose minor sanctions, and can also recommend sanctions to the Discipline Hearing Officer ("DHO"), who renders a final disposition." *See id.* (citation omitted). Defendant Snyder served as UDC Chairperson at the initial hearing against Plaintiff on December 4, 2004, after which the UDC referred the matter to the DHO. *See id.* at 12-13 (citation omitted). The DHO held a hearing on December 14, 2004, at which Plaintiff admitted to the charge; and the DHO found him guilty of refusing a direct order and sanctioned him to fifteen days segregated confinement. *See id.* at 13 (citation omitted).

On the same day that Plaintiff was released from SHU, he received another incident report for refusing a direct order. *See id.* Defendant Snyder again served as the UDC Chairperson for Plaintiff's initial hearing and again referred the case to the DHO. *See id.* (citation omitted). At the DHO hearing on January 14, 2005, Plaintiff again admitted to refusing a direct order and was sentenced to fifteen days in segregated confinement. *See id.* (citations omitted).

Magistrate Judge Treece noted that his review of the record showed that "Defendant Snyder did not have the authority to sentence Plaintiff to a term in SHU, and in fact, served only as the UDC Chairperson, nor was he otherwise involved in the incidents that led to Plaintiff's confinement." *See id.* (citing Snyder Decl. at ¶ 11). Furthermore, Magistrate Judge Treece stated that "Plaintiff [had] not presented any evidence that [Defendant] Snyder was involved in the assignment of Plaintiff to a cell, either before his refusal to stay in the Genesee B Unit on December 1, 2004, or upon his release from SHU on December 29, 2004, when he refused placement in the 12-man cell." *See id.* at 13-14. Therefore, Magistrate Judge Treece recommended that, "[b]ecause Plaintiff has failed to demonstrate that [Defendant] Snyder took

any adverse actions against him," the Court dismiss the claim against Defendant Snyder.  *See id.* at 14.

Defendant Salamy is a Case Manager at Ray Brook.  *See id.* (citation omitted).  Defendant Salamy wrote a memorandum about a conversation he had with Plaintiff on December 29, 2004, after Plaintiff was released from SHU and had then disobeyed another direct order to return to his assigned cell.  *See id.*  Furthermore, Defendant Salamy denies any involvement in Plaintiff's transfer to SHU on either occasion and contends that he did not retaliate against Plaintiff in any way.  *See id.* (citing Salamy Decl. at ¶ 7).  Magistrate Judge Treece noted that "[t]here is no evidence in the record that [Defendant] Salamy had any involvement in Plaintiff's placement in SHU on either occasion or in the 12-man cell after his release from SHU on December 29, 2004."  *See id.*  Furthermore, Magistrate Judge Treece stated that "Plaintiff has offered no evidence, documentary or otherwise, to rebut [Defendant] Salamy's sworn Declaration . . . [and, therefore,] there is no question of material fact regarding any adverse action [Defendant] Salamy allegedly took against Plaintiff."  *See id.*  Therefore, he recommended that the Court dismiss Plaintiff's retaliation claim against Defendant Salamy.  *See id.* at 15.

In his objections, Plaintiff asserts that "Magistrate Judge Treece improperly discounted the roles that [D]efendants Snyder and Salamy played in reassigning him to the Special Housing Unit."  *See* Plaintiff's Objections at 2.  Furthermore, Plaintiff argues that Magistrate Judge Treece's reliance solely on Defendants' affidavits to show that they played no role in punishing him, while discounting the fact that he produced no affidavits to show that they did play a role in punishing him, "flies in the face of the requirement that ambiguities and inferences be resolved in his favor."  *See id.*  Finally, Plaintiff contends that Defendants' "own proof shows that he was

retaliated against for complaining about unacceptably high levels of ETS . . . ." *See id.*

Despite Plaintiff's arguments to the contrary, there is nothing in the record that supports his contentions that either Defendant Snyder or Defendant Salamy retaliated against him in any manner because he exercised his First Amendment right to complain about his exposure to ETS. Therefore, the Court adopts Magistrate Judge Treece's recommendation and dismisses Plaintiff's retaliation claim.

### IV. CONCLUSION

After carefully reviewing the entire file in this matter, including Magistrate Judge Treece's Report-Recommendation and Order, Plaintiff's objections thereto, and the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that Magistrate Judge Treece's August 17, 2009 Report-Recommendation and Order is **ADOPTED** in its entirety; and the Court further

**ORDERS** that Defendants' motion for summary judgment is **GRANTED**; and the Court further

**ORDERS** that the Clerk of the Court shall enter judgment in favor of Defendants and close this case.

**IT IS SO ORDERED.**

Dated: September 29, 2009
Syracuse, New York

Frederick J. Scullin, Jr.
Senior United States District Court Judge